FRANCISCO ROBLEDO, MAYOR OF SANTA ISABEL, Petitioner,
v. COMMITTEE FOR THE SETTLEMENT OF MUNICIPAL
COMPLAINTS, Respondent.

No. D.A.-66-1.     Decided June 23, 1967.

2

*Carlos J. Irizarry Yunqué* and *Julio Fernández Cabrera* for petitioner. *J. B. Fernández Badillo, Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for respondent.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

■ Relying on the provisions of § 37(9) of the Municipal Law, Act No. 142 of June 21, 1960, as amended by Act No. 114 of June 27, 1964 (Sess. Laws, pp. 337, 343), 21 L.P.R.A. 1256,[1] Francisco Robledo appealed to this Court so that we determine whether or not his removal from the position of mayor of Santa Isabel, ordered by the Committee for the Settlement of Municipal Complaints, was justified. Two are the contentions on which petitioner relies in order to request that the committee's decision be set aside, to wit: (1) that said body erred in weighing the evidence and in finding defendant-petitioner guilty, and, (2) that even assuming that he committed the facts which were deemed proved it was error of law to order his removal on that account.

1. Aníbal Correa and José Matías Santiago, members of the Municipal Assembly of Santa Isabel, preferred charges against defendant, Francisco Robledo consisting of six counts. The Committee, considering that the charges were not frivolous or insufficient and that prima facie they involved immoral conduct or unlawful acts involving abandonment, inexcusable negligence or conduct prejudicial to the best public interest in the discharge of his duties, § 37(4), ordered the holding of a hearing. In the course of the hearing the aforesaid body

---

[1] "In case he is removed, the mayor shall have the right to appeal to the Supreme Court of Puerto Rico within ten (10) days following notice of said resolution, so that it may be determined whether or not the same was justified. Such finding shall issue through a writ of certiorari, and the findings of fact of the committee shall be final."

Even though the proceeding is labeled certiorari, we have understood that, considering the wording of the statute, the reviewing function granted to us is mandatory and that we are precluded from exercising discretion as to the propriety of the writ.

dismissed the second, third, and sixth counts[2] for insufficiency of evidence and the complainants withdrew the fourth and fifth charges.[3] The controversy, then, was limited to the first charge.

Insofar as pertinent the first charge reads:

"That on June 15, 1965 when the . . . Municipal Assembly . . . was holding a special meeting in order to consider the resignation of its chairman, Mr. Efraín Santiago, the defendant mayor burst into the assembly hall accompanied by two persons,

---

[2] "That the defendant mayor, Mr. Francisco Robledo, submitted the Report of the Municipal Finances and Administrative Activities of the Municipality of Santa Isable (sic) on October 5, 1965, in open violation of § 35(3) of the Municipal Law (21 L.P.R.A. 1254) which is a mandatory legal provision, without stating the reasons for his delay, thus precluding the Honorable Assembly from performing its duty.

". · · · · · · ·

"That in the construction of streets in 'Parcelas El Ojo' of Santa Isabel, the good will of which was adjudicated at public auction to contractor Marrero, and at the time of carrying out said works, certain dump pipes were broken in said area which were repaired by said contractor. The defendant mayor, for the purpose of benefiting contractor Marrero, submitted an Ordinance on September 7, 1964 to the Municipal Assembly in order that an item covering the expenses incurred in said repairs be approved, which expenses were necessarily included in the item approved by the Assembly in the original quotation.

". · · · · · · ·

"That in or about the months of September and October 1965, the defendant mayor procured, induced, and succeeded in having contractor Esteban Dueño submit to the Board of Awards of the Municipality of Santa Isabel a proposal to furnish one thousand meters of gravel to the Municipality of Santa Isabel offering an open price of $1.25 for the initial purpose of benefiting Mr. Dueño. The auction was awarded to a godchild of the defendant mayor for two cents less knowing in advance the price which Mr. Dueño would quote. . . ."

[3] "That on June 11, 1965 the defendant mayor published a notice of Public Auction in the newspaper 'El Día,' calling for bids for the purchase of a recorder with 5 microphones and attachments, without the Municipal Assembly previously approving the transfer from the item of surpluses, as required by law. Said notice was amended so as to acquire 12 microphones, the purchase being made only for 5 microphones in violation of the Assembly's order.

". · · · · · · ·

"That in or about the month of April 1965 the defendant mayor appointed a committee composed of 12 persons requested by a federal

in an evident state of intoxication, asked for the floor, to which Juan Santiago, member of the assembly, objected. In an aggressive attitude, the mayor, Francisco Robledo, uttering obscene words rushed to assault José Matías Santiago, assemblyman, but was prevented from doing so because of the mayor's wife's intervention. This action gave rise to the intervention of policeman Pablo Guzmán, who, upon asking for reinforcement, took the mayor and his escorts out of the room, the meeting of the Assembly being continued behind closed doors.

"The defendant mayor's attitude had the malicious intent of interrupting the works of the Assembly. . . .

"The foregoing constitutes immoral conduct, prejudicial to the best public interest. . . ."

The defendant mayor denied the facts attributed in this charge and as affirmative defenses alleged that the same are not connected with any violation of the Municipal Law and do not constitute immoral conduct or imply moral turpitude.

In their function of weighing the evidence the three members of the Committee, the chairman, Mr. Juan Enrique Géigel, and Mr. Francisco Parra Toro, and Mr. Francisco Torres Aguiar, agreed as to the basic facts that the defendant mayor interrupted the works of the Municipal Assembly asking for the floor, "in his capacity as mayor," in order to make some statements as to the content of an information published in the newspaper where some charges were preferred against him, and in attempting to attack one of the members of said municipal entity.[4] After analyzing the evidence which was qualified as "extremely conflicting, imprecise, and insufficient," as to the charge that defendant was in a state of intoxication, the members of the committee.

_____

agency, the appointment of which was submitted to San Juan without first procuring the approval and consent of the Municipal Assembly to said committee as required by said agreement grossly ignoring the responsibility of said Assembly."

[4] The pertinent part of the findings of fact as to which there are no discrepancies as related in the decision signed by Géigel and Parra Toro, reads as follows:

"20—The meeting of the Assembly continued with Efraín Santiago

agreed unanimously that there did not exist an adequate ground to reach such a finding. Not so as to the charge that the mayor used obscene words. Géigel and Parra Toro settled the conflict in the evidence and gave entire credit to those who maintain that while he reproved the members of the

---

presiding and shortly thereafter assemblyman, Miguel Rodríguez, asked for the floor in order to read an article published in the newspaper *El Día* of Ponce, where certain official acts of the defendant mayor were severely censured.

"21—While said article was being read to the Assembly, the defendant mayor was in his office in the same building of the city hall. Being there, he was informed of the charges preferred against him in the article which was read to the Assembly.

"22—Accompanied by his secretary, Julio Rodríguez, and other persons, the defendant mayor went to the Assembly hall and asked for the floor so as to answer the charges made against him.

"23—Assemblyman Juan E. Santiago objected to the mayor's petition and was seconded in his opposition by Assemblyman José Matías Santiago. The Chairman upheld the objection, refused to give the floor to the defendant mayor and declared him out of order.

"24—The defendant, who from the moment he reached the assembly hall was visibly upset and disturbed, became angry with the Chairman's decision. In violent and impolite tones he rebuked sharply the members present, and particularly the representatives of the Popular Democratic Party, whom he accused of having schemed with the members representing the minority.

"25—The mayor, in violent and angry tones, claimed his right to address the Assembly, . . . and centered his attacks against assemblyman, José Matías Santiago, whom he addressed with extremely rude and annoying words, while approaching him with the evident intent of attacking him. The attack was not consummated as a result of the prompt intervention of defendant's wife, who stood between him and José Matías Santiago.

"26—While the defendant mayor acted in the manner aforementioned, his Secretary, Julio Rodríguez, also insulted and rebuked in violent tones assemblyman, José Matías Santiago, challenging him to fight with him on the street.

"27—The mayor's and his secretary's acts produced a state of intense excitement in the municipal assemblymen and in the group of numerous citizens who were there as spectators. They became so excited that the Assembly's Chairman ordered policeman Pablo Guzmán to make all the people vacate the premises and the Assembly was adjourned.

"28—Policeman Guzmán asked the Police Station for reinforcement fearing that he could not control the situation by himself. However, before the Police Lieutenant and the Sergeant arrived at the assembly hall, policeman Guzmán had vacated the premises.

Assembly Robledo uttered obscene words. Mr. Torres Aguiar did not agree with this view.

■ The scope of our function in reviewing the proceedings had before the Committee for the Settlement of Municipal Complaints appears clearly delimited by the text of § 37 (9) aforecited which expressly provides that "the findings of fact of the committee shall be final." This provision was originally incorporated into the former Municipal Law of 1928 by the amendment introduced to its § 29 by Act No. 4 of December 7, 1955 (Sp. Sess. Laws, pp. 62, 72). It appears from the debate which took place in the Legislature when the bill which finally became the aforementioned law was being discussed that specifically it was sought to assimilate our power to review with the one usually granted to us with respect to the orders and decisions of boards or administrative agencies,[5] see, VI Journal of Proceedings 1734–1735 (1955),

"29—One of the last persons to leave the premises was the defendant mayor. He did not want to leave, despite the chairman's order and despite the policeman's requests to do so. Subsequently, as a result of the persistent requests of his wife and other friends present, the defendant mayor left the assembly hall.

"30—The works of the Municipal Assembly were interrupted until the people were calmed down and the premises were completely vacated. A little later, with no public at all, the session was resumed and several ordinances were approved.

"31—.            .       .       .       .       .       .       .

"32—.            .       .       .       .       .       .       .

"33—.            .       .       .       .       .       .       .

"34—.            .       .       .       .       .       ,       .

"35—The conduct observed by the defendant mayor on June 15, 1965 was extremely improper and irreproachable [sic] and provoked a violent situation which could have easily culminated in a disturbance with serious consequences."

[5] Cf. Section 9 of the Labor Relations Act, 29 L.P.R.A. § 70; Labor Relations Board v. Milares Realty, Inc., 90 P.R.R. 821 (1964); Labor Relations Board v. Acevedo, 78 P.R.R. 515 (1955); Rivera v. Labor Relations Board, 70 P.R.R. 5 (1949); § 29(b) of the Minimum Wage Act, 29 L.P.R.A. § 246(a); Sec. of Labor v. P.R. Cereal Extracts, Inc., 83 P.R.R. 259 (1961); Hilton Hotels v. Minimum Wage Board, 74 P.R.R. 628 (1953); Sunland Biscuit Co. v. Minimum Wage Board, 68 P.R.R. 345

8

and that interference with the facts would only be justified when it is adduced that the award thereof was not supported by the evidence presented, it constituting a question of law,[6] VII Journal of Proceedings 222 (1955). See *Rodríguez* v. *Committee, Etc.*, 84 P.R.R. 66, 70 (1961).

Even though under the legislation prior to the approval of Act No. 4 of December 7, 1955, *supra*, it was not expressly provided that the findings of fact were final,[7] we had usually granted significant deference to the findings of fact made by the trial body of first instance, *Piñero, Governor* v. *Grillasca*, 67 P.R.R. 853 (1947); *Tugwell, Governor* v. *Campos*, 65 P.R.R. 620 (1946); *cf. De Castro* v. *Board of Commissioners*, 57 P.R.R. 149 (1940); *Valldejuli* v. *City Manager*, 52 P.R.R. 275 (1937); *Fernández* v. *Pavía*, 42 P.R.R. 740 (1931); *Rivera* v. *Municipal Assembly*, 39 P.R.R. 71 (1929); *Coll* v. *Todd, Mayor*, 35 P.R.R. 572 (1926), although we reserved the power to discern as to the effect at law of the facts deemed proved; *cf. Piñero, Governor* v. *Barreto*, 68 P.R.R. 136 (1948).

---

(1948); § 11 of the Workmen's Accident Compensation Act, 11 L.P.R.A. § 12; *Vélez* v. *Industrial Commission*, 79 P.R.R. 266 (1956).

[6] *Ortega* v. *Industrial Commission*, 73 P.R.R. 184 (1952); *Heirs of Lledó* v. *Industrial Commission*, 65 P.R.R. 404 (1945); *Hernández* v. *Industrial Commission*, 60 P.R.R. 160 (1942).

[7] See, Act No. 55 of April 18, 1950 (Sess. Laws, pp. 138, 142), Act No. 98 of May 15, 1931 (Sess. Laws, pp. 594, 610), which upon referring to the statement which should accompany the petition for appeal allude to the statement of facts and of law on which it is based; Act No. 53 of April 28, 1928 (Sess. Laws, pp. 334, 358), which provided that this Court in reviewing the proceedings could take into consideration "not only the questions of law . . . but also the questions of fact and the weight and scope of the evidence"; Act No. 11 of June 25, 1924 (Sp. Sess. Laws, pp. 76, 88), which provided the right to appeal from a decision removing a mayor to a competent district court "which shall review the facts and render final decision as to whether or not there was just cause for removal." Under the Act approved March 8, 1906 (Sess. Laws, pp. 107, 114), and the Act of March 1, 1902 (1902 Revised Statutes, p. 226) the removal of a mayor by the Governor was final.

■ Petitioner in his discussion of this first error does not allege that the findings of the committee on the incident which occurred during the meeting of the assembly lack proof. He, rather, limits himself to challenging the weighing of the act of assault of an assemblyman by the mayor[8] and to insist that if the testimony of the principal witness, Matías, was disregarded in other points it should also not deserve credit as respects this one. For the reasons stated we shall not interfere with the committee's function of adjudicating the facts. It is advisable to indicate that with very similar evidence a like weighing was made by both, the District Court, as well as by the Superior Court, Ponce Part, in a new trial in the criminal action filed against defendant for the same facts. By judgment rendered on March 27, 1967 in appeal CE-66-10, *People* v. *Robledo*, we refused to disturb the weighing of the evidence made by the trial court.

2. Under the legislation in force, § 37(1), the observance by a mayor of "immoral conduct or unlawful acts involving abandonment, inexcusable negligence, or conduct prejudicial to the best public interest in the discharge of his duties" constitutes cause for the preferment of charges against him. The committee is empowered to order the removal when the charges are found to be proved, except that if unlawful acts of a slight nature are involved the penalty is limited to directing the publicizing of the facts proven, with the remarks to be deemed pertinent, § 37(5).

Do the facts proved constitute sufficient cause to order the removal of defendant? The committee's view on this par-

---

[8] Petitioner indicates that the Committee did not expressly determine that Robledo threw a punch or attempted to slap assemblyman Matías. Although the assault was not described in the manner contemplated, there is no doubt that it was concluded that the defendant attempted to make a physical attack, finding No. 25 copied in footnote 4. The manner in which the attack was attempted is unimportant.

ticular was not unanimous. In essence the majority opinion signed by Mr. Géigel and Mr. Parra Toro qualifies the conduct observed by petitioner as an improper intervention in the municipal legislative proceeding with criminal intent against the cardinal principle of the separation of powers. They rely on the impropriety in attempting to participate in the deliberations of the assembly without an invitation or request to that effect, on his unwise selection of forum to defend himself of the challenges he considered unjustified, and on his defiance to the constituted authority insisting on addressing the assembly and the public congregated therein despite the fact that he had been declared out of order, and what is even more censurable, assuming an aggressive and violent attitude and using vile and impudent language. Their position is summarized as follows: "The defendant-mayor's conduct . . . was prejudicial to the best public interest because it was an improper and unjustified interference of the executive power of the municipality . . . with the legislative functions of said municipality; an open defiance to the authority of the legislative power; and an attempt of the executive power to threaten and coerce the legislative power in the performance of its functions." Consequently, for the purposes of setting an example in order to avoid that these improper interferences of the executive power with the legislative functions be repeated in the future, the maximum penalty prescribed by law was imposed on him. On his part, the dissenting member of the Committee, Mr. Torres Aguiar, although he admits that the conduct observed by mayor Robledo is censurable, improper and offensive, concludes that it does not partake of the necessary seriousness, considering that it was the result of a moment of excitement and that it is not a question of reiterated actions of said officer.

The former legislation[9] and the rare occasions on which we have reviewed the removal of mayors[10] do not shed much light on the content of the concept "unlawful acts involving . . . conduct prejudicial to the best public interest." In *Rivera* v. *González*, 41 P.R.R. 777 (1931), a mayor was

---

[9] *Synoptic Chart of the Causes of Removal of Mayors in Puerto Rican Legislation (1898–1960)*

| Law | Causes of Removal |
|---|---|
| 1. Section 52 of the Municipal Law promulgated by the Royal Decree of December 31, 1896, left in effect by Art. IX of the General Military Order No. 1 of October 18, 1898. | a. "just cause" determined by the Governor General. |
| 2. Section 26 of the Municipal Law, approved March 1, 1902, Revised Statutes 1902, § 607, p. 226. | a. "misconducts himself" determined by the Governor. |
| 3. Section 35 of the Municipal Law, approved March 8, 1906 (Sess. Laws, pp. 107, 114). | a. "in case he misconducts himself" in the Governor's judgment. |
| 4. Section 29 of the Municipal Law of 1919, as reenacted by Act No. 11 of June 25, 1924 (Sess. Laws, pp. 76, 90). | By the Governor for the following reasons: (a) "Any act constituting a felony." (b) "Any act constituting a misdemeanor which implies moral turpitude." (c) "Manifest negligence in the discharge of his office and immoral or incorrect conduct in the exercise thereof." |
| 5. (a) Section 29 of the Municipal Law of 1928, No. 53 of April 28, 1928 (Sess. Laws, pp. 334, 358). | By the municipal assembly for the same causes established in Act No. 11 of June 25, 1924. |
| (b) Amended by Act No. 98 of May 15, 1931 (Sess. Laws, pp. 594, 608). | By the municipal assembly "for just cause" or by the |

charged with being addicted to the use of liquor and having attended a dance held by prostitute women in neglect of his official duties. In reversing the removal decreed by the assembly, we said that such conduct, although reprehensible did not constitute the immoral or incorrect conduct in the exercise of the duties of his office which was in the mind of the lawmaker. In *Díaz* v. *Charneco*, 48 P.R.R. 521 (1935), we referred to the fact that the concept just cause required that there be a relation of a substantial nature affecting the interests of the public. We made a similar pronouncement in *Municipal Assembly* v. *Steidel*, 54 P.R.R. 790 (1939).

The manner in which the statute is drafted suggests that the governing view for the removal does not partake of a punitive nature for the incumbent but contemplates the purpose of avoiding prejudice to the public interest. The measure should contemplate the improvement of public service, and therefore, conduct prejudicial to the morale and ef-

---

(c) Amended by Act No. 55 of April 18, 1950 (Sess. Laws, pp. 138, 140).

(d) Amended by Act No. 4 of December 7, 1955 (Sess. Laws (3), pp. 62, 68).

Governor when the assembly refuses to take action.
a. By a standing committee of the Legislature, for gravely immoral conduct or unlawful acts in the performance of his functions.

By the Committee for the Settlement of Municipal Complaints, for immoral conduct or unlawful acts in the discharge of his duties.

[10] See, in addition to the cases mentioned in the text of the opinion, *Municipal Assembly* v. *González, Mayor*, 55 P.R.R. 526 (1939); *De Castro* v. *Board of Commissioners*, 57 P.R.R. 149 (1940); *Piñero, Governor* v. *Grillasca*, 67 P.R.R. 853 (1947); *Piñero, Governor* v. *Barreto*, 68 P.R.R. 136 (1948).

ficiency of the public function must be involved. In general, 3 Antieau, Municipal Corporation Law, § 22.22 (1966); Yokley, Municipal Corporations, § 339 (1957); McQuillin, Municipal Corporations, § 12.237 (3d ed., 1949). In such sense, we cannot conclude that it appears with crystal clearness that defendant's action has affected in a substantial and irreparable manner the operation of the municipal government. Although it is true that defendant's action interrupted the meeting of the assembly the evidence shows that after the premises were vacated the deliberations continued. Any other citizen who might have incurred the same conduct would have been tried for breach of the peace and assault only, as was the defendant herein. In passing, it is advisable to indicate that there is nothing at the present time in the law expressly prohibiting the appearance of the mayor at the meetings of the municipal legislative body. In the Municipal Law of 1906, *supra*, a provision was incorporated to the effect that "The Alcalde shall not attend meetings of the council, but shall appear before it when so requested by the council, in order to furnish such information relative to the affairs of the municipality as may be desired by said council." (Section 31.) It was thus retained in Act No. 11 of June 25, 1924, *supra* (§ 29), but it was eliminated since the adoption of the Municipal Law of 1928.

On the other hand, there is weight in the fact that an officer selected in general elections who received the trust of the inhabitants of the municipality is involved and that the alleged cause is not so serious and of such consequences as to require that the popular mandate be ignored.

A careful consideration of all the concurrent circumstances leads us to conclude that what probably exists is a state of friction between the mayor and some of the members of the municipal assembly which if continued may prejudice public affairs. It is thus acknowledged in the findings of fact

14

made.[11] But the remedy for this situation is provided in § 107 of the Municipal Law in force, 21 L.P.R.A. § 1741, which originated in § 11 of the Municipal Law of 1928, *supra*, p. 342. See, *Ramírez* v. *Beverly, Governor*, 44 P.R.R. 317 (1932).[12]

■■ We are not interfering in any manner with the findings of fact of the committee; we only decide that the conduct deemed proved does not constitute as a *question of law* the "immoral conduct or unlawful acts involving abandonment, inexcusable negligence, or conduct prejudicial to the best public interest in the discharge of his duties" which as a ground for removal was prescribed by the lawmaker. To claim that our function is limited to determining whether the order removing the mayor is justified is a view which we cannot adopt for it would practically make the committee the absolute and unique arbitrator of the municipal offices, depriving the aggrieved ones of resorting to an adequate forum in order to challenge its conclusions of law.

■ Finally we want to establish with crystal clearness that we do not condone in any manner the acts of the defendant mayor. His conduct, an attempt of provincial caciquism,[13] is an assault against the very roots of the democratic government of the municipalities. But the law does not authorize us to discern as to the fitness of the defendant; it is incumbent upon the political entities and upon the electorate to judge his qualifications.

---

[11] "2.—Sometime after the municipal administration of Santa Isabel, elected in November of the preceding year, was installed, friction appeared between the mayor and some members of the Municipal Assembly."

[12] It is significant that this provision as well as the one concerning judicial review of the acts of the assembly in the proceedings for the removal of the mayor are incorporated when the power to institute impeachment proceedings is transferred from the Governor to this body.

[13] The defendant holds the positions of Chairman of the Municipal Local Committee of the Popular Democratic Party and of the Local Union 847, Independent of Santa Isabel. See, *Labor Relations Board* v. *Unión Local 847,* 91 P.R.R. 750 (1965).

By virtue of the foregoing the decision of the Committee for the Settlement of Municipal Complaints will be set aside and the final dismissal of the charge filed against the Mayor of Santa Isabel, Francisco Robledo García, will be ordered.

Mr. Chief Justice Negrón Fernández did not participate herein. Mr. Justice Santana Becerra dissented in an opinion in which Mr. Justice Hernández Matos concurs.

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. JUSTICE HERNÁNDEZ MATOS concurs, dissenting.

San Juan, Puerto Rico, June 23, 1967

Section 37 of the Municipal Law, Act No. 142 of July 21, 1960, as amended by Act No. 114 of June 27, 1964, provides for the removal of the mayor, by reason of immoral conduct or unlawful acts involving abandonment, inexcusable negligence, or conduct prejudicial to the best public interest in the discharge of his duties. In order to take cognizance of the removal, the Law created the "Committee for the Settlement of Municipal Complaints," before which charges are preferred against the mayor. The law expressly provides that the Committee shall decide whether or not the charges preferred have been proven and specifically, that "if they have, *it shall proceed to remove the mayor*, who shall become definitively separated from his office." It is prescribed, however, that in those cases in which it arises, from the facts established, that the case is one of unlawful acts of a slight nature, the Committee may order that the mayor continue in office, and direct the publicizing of the facts proven, with the remarks it may deem pertinent to make thereon. Should it be found that the charges are insufficient or that the same have not been proven, the mayor shall continue in office.

Section 37 itself provides that in case the mayor is removed he shall have the right to appeal to the Supreme Court of Puerto Rico, so that it may be determined whether or not the decision removing him was justified, and such finding shall issue through a writ of certiorari in which the findings of fact of the Committee shall be final.

Four assumptions of law are normative of the reviewing function of this Court in cases of this nature: (1) If the Committee finds that the charges have been proved it shall, by operation of the law, remove the mayor, except that, (2) if in the opinion of the Committee, from the facts established it arises that the case is one of unlawful acts of a slight nature, the Committee may, in its discretion, direct the publicizing of said facts, with the remarks it may deem pertinent to make without there being any removal; (3) the jurisdiction of this Court is to determine whether or not the decision removing the mayor was justified; and (4) in making such a finding it must admit the findings of fact of the Committee which the law declares as final.

From the statutory point of view the rules of review are clearly defined. Of course, it is always incumbent upon the courts, whether or not it is prescribed by law, to honor the constitutional guarantees of the due process. Findings of fact of the Committee which are plainly whimsical, arbitrary or in the absence of proof which may substantially support them, would be contrary to the due process and could not prevail. *Cf. Schware* v. *Board of Bar Examiners*, 353 U.S. 232, 239; *Konigsberg* v. *State Bar*, 353 U.S. 252; *Slochower* v. *Board of Education*, 350 U.S. 551, 559; *Wieman* v. *Updegraff*, 344 U.S. 183, 192.

Our function, then, is limited to seeing that the record does not lack substantial evidence in support of the findings of fact of the Committee. If such substantial evidence exists, I do not believe, within the rule of review established by

the lawmaker, that we can go any further interfering with the aforesaid findings of fact, nor do I believe that it is permissible to weigh or evaluate the evidence differently or that in such weighing we might substitute our view for that of the Committee. The Committee is like a jury of the people for the purposes of judging an officer elected by the people. The mandate that the findings of fact of that court be final, should have, and has, a deep raison d'être, since the lawmaker is not prone to doing idle things.

Subject to the rules of law previously set forth as to which should be my attributes, I turn to discuss my view in the decision of this appeal.

The Committee determined as a matter of fact that shortly after the defendant mayor had been installed in 1965, friction and differences arose between the mayor and members of the Municipal Assembly; that at the meeting of the assembly of June 2, 1965, the resignation of its chairman, Efraín Santiago, was accepted; that some days later the mayor summoned the assembly to a special meeting to be held on June 15, 1965 in order to consider the vacancy of the Chairman, that in the list of three names submitted for assemblyman by the mayor, there appeared the name of his son; then there was doubt as to the validity of the acceptance of the chairman's resignation and on that account and since the meeting of June 15, 1965 was called to fill said vacancy, the meeting provoked great interest in the citizens of Santa Isabel and from its commencement the hall was filled to capacity by about 100 persons who had come as spectators.

The Committee concluded that in the course of the debate on the validity or annulment of the acceptance of the resignation of the chairman "an incident occurred which was caused by Vidal Bajandas, Recreation Leader of the municipality of Santa Isabel, who was present among the spectators. Bajandas, in an evident state of intoxication, was talking

out loud, annoying the assemblymen. Subsequently, he asked for the floor, which was denied by the acting Chairman, Aníbal Correa. Bajandas persisted in his disturbing attitude to such an extent that the acting chairman ordered the state policeman Pablo Guzmán, who was there to see that peace was preserved, to take him out of the room." The policeman complied with the order and the debate continued and concluded with the annulment of the acceptance of the resignation. From among the members of the Assembly a committee left to bring Efraín Santiago before the assembly. Santiago appeared, withdrew his resignation and with a vote of confidence from the Assembly he assumed again the chairmanship.

The findings of fact of the Committee continue as follows:

"20—The meeting of the Assembly continued with Efraín Santiago presiding and shortly thereafter assemblyman Miguel Rodríguez asked for the floor in order to read an article published in the newspaper *El Día* of Ponce, where certain official acts of the defendant mayor were severely censured.

"21—While said article was being read to the Assembly, the defendant mayor was in his office in the same building of the city hall. Being there, he was informed of the charges preferred against him in the article which was read to the Assembly.

"22—Accompanied by his secretary, Julio Rodríguez, and other persons,[*] the defendant mayor went to the Assembly hall and asked for the floor so as to answer the charges made against him.

"23—Assemblyman Juan E. Santiago objected to the mayor's petition and was seconded in his opposition by Assemblyman José Matías Santiago. The Chairman upheld the objection, refused to give the floor to the defendant mayor and declared him out of order.

"24—The defendant, who from the moment he reached the assembly hall was visibly upset and disturbed, became angry

---

[*]Policeman Guzmán, who had gone down from the second floor with Vidal Bajandas, testified that the mayor went upstairs again with Bajandas and Julito Rodríguez.

with the Chairman's decision. In violent and impolite tones he rebuked sharply the members present, and particularly the representatives of the Popular Democratic Party, whom he accused of having schemed with the members representing the minority.

"25—The mayor, in violent and angry tones, claimed his right to address the Assembly, . . . and centered his attacks against assemblyman, José Matías Santiago, whom he addressed with extremely rude and annoying words, while approaching him with the evident intent of attacking him. The attack was not consummated as a result of the prompt intervention of defendant's wife, who stood between him and José Matías Santiago.

"26—While the defendant mayor acted in the manner aforementioned, his Secretary Julio Rodríguez, also insulted and rebuked in violent tones assemblyman, José Matías Santiago, challenging him to fight with him on the street.

"27—The mayor's and his secretary's acts produced a state of intense excitement in the municipal assemblymen and in the group of numerous citizens who were there as spectators. They became so excited that the Assembly's Chairman ordered policeman Pablo Guzmán to make all the people vacate the premises and the Assembly was adjourned.

"28—Policeman Guzmán asked the Police Station for reinforcement fearing that he could not control the situation by himself. However, before the Police Lieutenant and the Sergeant arrived at the assembly hall, policeman Guzmán had vacated the premises.[*]

"29—One of the last persons to leave the premises was the defendant mayor. He did not want to leave, despite the chairman's order and despite the policeman's requests to do so. Subsequently, as a result of the persistent requests of his wife and other friends present, the defendant mayor left the assembly hall.

"30—The works of the Municipal Assembly were interrupted until the people were calmed down and the premises were com-

---

[*]Policeman Guzmán, witness of the mayor, testified that he sent notice to the police station and to the Lieutenant because, of the one hundred persons who were there, some stood up and all of them talked, some asking to let the mayor speak and others saying not to let him speak, and he believed that something unusual would happen.

pletely vacated. A little later, with no public at all, the session was resumed and several ordinances were approved.

"31—Two days later policeman Guzmán filed a complaint of his own personal knowledge against Julio Rodríguez, Secretary of the Mayor, for breach of the peace, and against the defendant mayor for the offense of aggravated assault and battery. Both complaints were verified before the District Judge of Salinas because the Justice of the Peace of Santa Isabel was disqualified.

"32—The trial in both cases was held in the Salinas Part of the District Court and both defendants were convicted of the offense charged against each one.

"33—An appeal having been taken to the Ponce Part of the Superior Court from the judgment of conviction of Julio Rodríguez, the latter pleaded guilty of the offense charged against him.

"34—The defendant mayor appealed to the Ponce Part of the Superior Court from the judgment rendered against him by the District Court, which was affirmed and is at the present time pending appeal before the Supreme Court of Puerto Rico.[*]

"35—The conduct observed by the defendant mayor on June 15, 1965 was extremely improper and irreproachable [sic] and provoked a violent situation which could have easily culminated in a disturbance with serious consequences.

"36—The plaintiffs alleged in the preferment of charges that the defendant mayor burst 'into the assembly hall . . . in an evident state of intoxication . . . uttering obscene words . . . .' The evidence presented in the charge of intoxication was extremely conflicting, imprecise, and insufficient. Some witnesses affirmed that the defendant acted in the manner indicated in the foregoing paragraphs in an evident state of intoxication. However, after considering the evidence as a whole, the Committee has not found therein an adequate ground to reach the conclusion that the defendant was in a state of intoxication during the evening of June 15, 1965. As to the charge of obscene language, the evidence was also contradictory and conflicting, but when carefully analyzed the Committee has settled the conflict in the evidence and accepting the one which deserved entire credit it has been completely convinced that the defendant mayor used

---

[*] By judgment of March 29, 1967 this Court affirmed the conviction of the mayor for aggravated assault.

obscene language while he was reproving the members of the Municipal Assembly."[1]

Among the members of the Committee, it was a legitimate function for a member to be at variance with the others in the weighing of the evidence and as to elements of credibility.

---

[1] The distinguished member of the Committee, Mr. Torres Aguiar, in his dissenting decision summarized the evidence with respect to the use of obscene language as follows:

". . . As to the charge of having used obscene language, the other fellow-members of the committee believe that 'the evidence was also contradictory and conflicting' but conclude that that same evidence convinced them that the mayor committed the alleged fault, contrary to our view. Let us see.

"The witness and complainant assemblyman, José Matías Santiago, undoubtedly a passionate person, much interested in seeing that the charges would prosper, testified that when the mayor reached the Assembly 'he asked for the floor' and 'he was in an evident state of intoxication, gesticulating with his hands and talking stentoriously, disorderedly, improperly . . .' (Tr. Ev. 158–159 of April 6, 1966). Upon being declared out of order, 'Francisco Robledo became angry . . . and told the assembly, at the top of his voice, that he did not speak because that was a republican assembly.' According to the witness, the mayor said: '*Coño*, I cannot speak here because this is a republican assembly' (Tr. Ev. 159 of April 6, 1966). Later, according to the testimony of Matías Santiago, the mayor tells the witness, '*Coño*, you are the worst scoundrel, villain,' and then says '*Coño, carajo*, this is a republican assembly, they do not let me speak here, these are a lot of scoundrels and you are the worst, you villain' (Tr. Ev. 169, April 6, 1966). Then the witness repeats the same thing (Tr. Ev. 170, April 6, 1966). The witness continues testifying that he never complained of the mayor's attitude to the police. (Tr. Ev. 176, April 6, 1966); that he did not testify on the mayor's state of intoxication in the Superior Court 'because they did not ask me' (Tr. Ev. 180, April 6, 1966); that in the Superior Court, in his testimony the witness said that the mayor had said '*coño*' but it seems that he forgot the word '*carajo*.' (Tr. Ev. 184.)

"                                                                       

"Complainants' witness, Pedro Juan Moreno, public school teacher (Tr. Ev. 194, April 6, 1966) and Republican Statehood assemblyman (Tr. Ev. 195, April 6, 1966), and who deserved our credit for his evident impartiality, testified that 'the mayor entered in an attitude . . . he was upset and then asked for the floor' and an assemblyman objected and was seconded by José Matías Santiago (Tr. Ev. 195, April 6, 1966). When his petition was denied 'he said that the assembly was a republican one' (Tr. Ev. 196, April 6, 1966). After the incident with Matías Santiago, the mayor 'withdrew (from the assembly) because he decided to do so and considered that his wife's objection, as well as that of his friend

It was incumbent upon them to perform that function. It should not be the function of this Court to decide which of the two views of the Committee should prevail. The facts proved which are binding upon us are those determined by

---

requesting his withdrawal, was valid and then he decided to withdraw from the assembly' (Tr. Ev. 199, April 6, 1966). When the witness was asked whether he heard the mayor uttering any obscene word, he answered, 'Well at least I do not remember.' (Tr. Ev. 216, April 6, 1966.) Upon being examined by the undersigned member of the Committee, the witness testified that what the mayor was doing was talking loud, merely loud (Tr. Ev. 218). Upon being examined by committeeman Parra Toro, as to whether the witness heard any obscene word, the witness says 'I do not remember, because it was a thing so . . .' (Tr. Ev. 219, April 6, 1966).

"The next witness was Efraín Santiago Santiago, teacher of social studies of the junior-high school (Tr. Ev. 223, April 6, 1966), who was presiding the Municipal Assembly the night of the events (Tr. Ev. 229, April 6, 1966). This witness for the complainants testified that the mayor entered the meeting 'disturbed', that that was all (Tr. Ev. 232, April 6, 1966); that he did not see the attack (Tr. Ev. 237–238, April 6, 1966). To questions of the Chairman of the Committee, the witness testified that the mayor, while his wife covered his mouth, said: 'coño, let me speak, I can speak', that aside from that word, the mayor did not utter any other obscene word (Tr. Ev. 246, April 6, 1966); that what the mayor said to assemblyman Matías Santiago was 'you are to blame for all this' (Tr. Ev. 246, April 6, 1966). Upon being questioned by complainants' counsel, the witness testified that the mayor, referring to Matías Santiago, 'I think that he said scoundrel, you are to blame for all this.'

"So far, the evidence of complainants as to the use of obscene words, which, as we have already said, is extremely conflicting and contradictory, to such a point that it does not convince us. Probably, the mayor used the word 'coño' in a moment of indignation, excitement, and anger, when his wife interfered but the evidence, we repeat, does not satisfy us in order to make a concrete finding as to that fact. The only witness who alleges that defendant used offensive words continuously, is complainant Matías Santiago. The policeman who made the investigation of the events, Pablo Guzmán, who was called to the witness stand by the defendant, testified that he did not hear the mayor uttering obscene words nor using the word 'coño' (Tr. Ev. 12, August 10, 1966).[*] The witness testified that he saw the mayor 'well', 'except that he became annoyed and protested energetically because they did not allow him to speak' (Tr. Ev. 17, August 10, 1966)."

[*]*Note*: Policeman Guzmán stated several times that he did not see the incident of the mayor and it was unknown to him because at that moment he was intervening, in order to take him outside, with the secretary Rodríguez, who was challenging assemblyman Matías to go outside.

the committee, in this case a majority. It is thus expressly provided in § 37(b) of the law. In connection with similar statutory provisions, compare the expressions of this Court in *Labor Relations Board* v. *Namerow*, 69 P.R.R. 77, 81 (1948); *Cepeda* v. *Industrial Commission*, 76 P.R.R. 750, 758 (1954); *Labor Relations Board* v. *Simmons Int'l, Ltd.*, 78 P.R.R. 360, 370 (1955); *Tugwell, Governor* v. *Campos*, 65 P.R.R. 620, 635 (1946); *Piñero, Governor* v. *Grillasca*, 67 P.R.R. 853, 869 (1947); *cf. Heirs of Muñoz* v. *Cepeda*, 72 P.R.R. 554, 567 (1951); *Labor Relations Board* v. *Línea Suprema, Inc.*, 89 P.R.R. 821 (1964) and cases cited therein.

I have examined the record meticulously and the findings of fact of the Committee are properly sustained by competent evidence. Its conclusions of law, based on those facts, are neither arbitrary nor whimsical. They show a calm and thoughtful weighing of the seriousness of the conduct in question. It concluded that the acts of the mayor constituted "unlawful acts involving . . . conduct prejudicial to the best public interest in the discharge of his duties." This finding is correct. His acts were unlawful—§§ 358 and 368 Penal Code, 1937 ed.; Act of March 10, 1904—and also prejudicial to the public interest, since once the Assembly refused to give him the floor, his conduct insisting thereon without being an assemblyman was a deliberate provocation seeking to subvert the institutional order, impairing the due respect to the legal functions of the other branch of the municipal government, inducing even the public to intervene in the deliberations of the assembly. Any deliberate injury to an established institutional order of law is a serious act of conduct, even more so if it is deliberately performed by one who, pursuant to law, is the one called upon to maintain said institutional order.

A Municipal Assembly fearful of or subject to the whims of a mayor ceases to be the lawful representative entity created by law to maintain the balance of power and to

restrain the unipersonal will of the executive, in its excesses or misbehavior. The findings of the Committee sustained by substantial evidence being, as they are, reasonable, I do not believe that they reveal slight unlawful acts. The Committee did not consider them so after a conscious weighing of the facts and circumstances present.

In *Rodríguez* v. *Committee, Etc.*, 84 P.R.R. 66 (1961), we upheld the removal of a mayor in circumstances wherein, having obtained, through steps taken by him personally, from the Housing Authority certain surplus construction materials, believing that he could do it, he invested them in the construction of milk distribution centers in the rural zone and others for the community, without personal profit, but without complying with the legal technical rules for the disposal of municipal property, it having been determined that the material had been granted to him in his capacity as mayor.

In the scale of ethical values I do not believe that the prejudice to the public interest in that case and its circumstances, if there was any, was more important than the prejudice to the public interest in the instant case.

If, as the Committee concluded, and as it should be, the unlawful acts of the defendant mayor are not of a slight nature, the removal is mandatory by express provision of § 37 of the Municipal Law. Because I am of the opinion that the order removing the mayor is justified, I dissent.